**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

TODD BALES                                                                                                    PLAINTIFF

V.                                         NO: 4:11CV00194 HDY

CLAYTON EDWARDS                                                                                        DEFENDANT

## ORDER

Plaintiff Todd Bales filed a *pro se* complaint, pursuant to 42 U.S.C. § 1983, on February 28, 2011, alleging that Defendants Clayton Edwards, Wright, and Dixson, all of whom are employed at the White County Jail, violated his constitutional rights. A Court trial was held on October 12, 2011. Following the presentation of testimony by the parties and witnesses, and the introduction of exhibits, the preponderance of the evidence causes the Court to make the following findings of fact and conclusions of law.

Plaintiff was a pre-trial detainee at the White County Jail From December 16, 2010, until June 26, 2011, when he transferred to Independence County. Plaintiff alleges that he was denied the right to correspond with his wife, was denied an acceptable Bible, and was denied adequate medical care, when he was held at the White County Jail. At the outset of the trial, Plaintiff moved to voluntarily dismiss his claims against Wright and Dixson, which the Court will grant, leaving for consideration only Plaintiff's claims against Clayton Edwards, the jail administrator.

Mail

Testimony at the hearing indicated that for some period of time Plaintiff was not allowed to send mail to, and receive mail from, his wife, because she was also detained at the jail. According to Edwards's testimony, jail policy prohibited such communications between detainees in order to

1

maintain a safe environment and to inhibit plans for any illegal or inappropriate activity.[1] Although it is well settled that inmates have a right to receive mail, that right may be limited by prison regulations that are reasonably related to legitimate penological interests. *Weiler v. Purkett,* 137 F.3d 1047, 1050 (8th Cir. 1998), *citing Turner v. Safley*, 482 U.S. 78, 92 & 89 (1987). The *Turner* Court articulated four factors to consider in evaluating the reasonableness of a prison regulation. First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it. Second, the Court must examine whether there are any alternative means of exercising the right. A third consideration is the impact accommodation of the asserted constitutional right will have on guards, other inmates, and allocation of resources generally. Finally, the absence of ready alternatives is evidence that a regulation is reasonable. *Id*. at 89-91. There is clearly a valid ration connection between the jail's mail restriction and the safety concerns. Although Plaintiff apparently had no other ways to communicate directly with his wife when she was detained, there is no evidence of any ready alternative, and allowing detainees to write to each other could have obvious negative consequences on guards and others at the jail. Therefore, the jail's policy prohibiting correspondence between detainees is reasonably related to legitimate penological interests, and Plaintiff therefore has no constitution claim with respect to his mail issues. Furthermore, the jail's mail log, submitted by Defendants as their exhibit #4, indicates that Plaintiff received mail from his wife as early as March 14, 2011, after her release from custody, and that he was able to correspond with various other parties throughout 2011.

Religious claims

According to Plaintiff's testimony, he wanted a copy of the King James Bible, or the New

---

[1] An excerpt from the policy was provided as Defendants exhibit #1.

King James Bible, but was only provided with a different translation. He said that the only Bible he received was not "up to his standards." Although Plaintiff alleged that jail officials were trying to force their version of the Bible on him, testimony indicated that the county provides no Bibles, but that private donors provide detainees with Bibles as they are able. According to Edwards's testimony, the only "standard" the jail has for Bibles is that they must not have hard covers, and they must not contain leather or metal. The jail's standards for Bibles are the same as for any other book, and the content of any particular translation is irrelevant. Plaintiff also claimed that his family members tried to bring him an acceptable version that complied with jail policies, but were not allowed to give it to him. However, there was no allegation that Edwards himself denied Plaintiff the family's Bible, or that he was aware of such a denial. Thus, any claim against Edwards for the alleged denial of the Bible is founded upon an improper *respondeat superior* theory, and must be dismissed. *See Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)(no *respondeat superior* liability for § 1983 violations); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)(prison officials and supervisors may incur liability only for their personal involvement in a constitutional violation or for corrective inaction that amounts to deliberate indifference or tacit authorization of unconstitutional practices).[2]

Medical care

Finally, Plaintiff asserts that he was denied adequate medical care, primarily for his psychiatric issues. Evidence introduced at the trial indicated that medical services at the White County Jail are provided by a third party contractor. Plaintiff testified that he named Edwards as

---

[2]Moreover, Plaintiff testified that he was allowed to pray, attend religious services, and meet for Bible study on a daily basis, where he had access via fellow detainees to the Bible translation he desired.

a Defendant with respect to his medical claims because Edwards is the jail administrator, and not because of any personal involvement that Edwards had in his medical care. However, as discussed above, *respondeat superior* is not a basis of liability for § 1983 claims. *See also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir.1997) (general responsibility for supervising prison operations is insufficient to establish personal involvement required to support liability; where prison official was not involved in treatment decisions and lacked medical expertise, and medical-care inquiries were referred to medical unit, claim should have been brought against individual directly responsible for inmate's medical care).

Even if Edwards had been personally involved, the evidence indicates that Plaintiff received adequate care. Although Plaintiff was a pre-trial detainee at the time the events giving rise to this complaint occurred, the same Eighth Amendment standards are applied to his inadequate medical care claims as those made by convicted inmates. *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006). The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To succeed with an inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). However, "'Grossly incompetent or inadequate medical care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious

course of treatment.'" *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

Medical reports Defendants introduced as exhibit #8 reveal that there may have been some delay with respect to a mental evaluation, but that Plaintiff received a psychiatric screening on February 26, 2011, was further evaluated at the White County Medical Center on February 28, 2011, and thereafter was prescribed medication.

Plaintiff also raised complaints that he was denied eyeglasses, which created some reading difficulties for him. Even if the Court assumes that Plaintiff's vision problems were a serious medical need, Plaintiff described no injury he sustained as a result of not having eyeglasses. Thus, the evidence does not establish deliberate indifference to Plaintiff's medical needs.[3]

Based on the evidence introduced at the trial, the Court concludes that Plaintiff failed to demonstrate that Edwards was responsible for any constitutional violation with respect to Plaintiff's mail, religious practices, or medical care, and that Plaintiff's complaint must be therefore be dismissed.

IT IS THEREFORE ORDERED THAT:

1.  Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE with respect to his claims against Defendants Wright and Dixson, and DISMISSED WITH PREJUDICE with respect to his claims against Defendant Clayton Edwards.

2.  The Court certifies that an *in forma pauperis* appeal taken from the order and

---

[3]Plaintiff also complained that he was assigned to the "J-Pod" while he being treated for mental health issues. However, Plaintiff described no conditions in the J-Pod which amount to a constitutional violation. Testimony offered by Edwards indicated that the J-Pod is used to house detainees for a variety of reasons, including for their own safety.

judgment dismissing this action is considered frivolous and not in good faith.

DATED this __14__ day of October, 2011.

                                                                        UNITED STATES MAGISTRATE JUDGE